## Herron *v.* Wampler.

*Partnership—Surviving partner—Evidence—Party dead.*
A surviving partner cannot testify as to matters which occurred between him and his deceased partner prior to the death of the latter.

*Partnership—Surviving partner—Compensation.*
A surviving partner is not entitled to compensation for winding up the firm's business.

Argued Oct. 22, 1900.   Appeal, No. 7, Oct. T., 1900, by defendant, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1895, No. 445, overruling exceptions to master's report, in case of Joseph A. Herron, John L. George and Thomas H. Given, executors and trustees of James Neel, deceased, and Nancy Neel, v. William P. Wampler.   Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Bill in equity for an account against a surviving partner.

By agreement the case was referred to John G. MacConnell, Esq., Master, with the following powers and duties:

1. To pass upon the exceptions filed by the plaintiffs to the account of William P. Wampler, as surviving partner.

2. To ascertain the indebtedness of the firm of Neel & Wampler.

3. To ascertain the assets of the firm of Neel & Wampler, as now existing.

4. To ascertain the indebtedness, if any, owed by the estate of James Neel to the firm of Neel & Wampler.

5. To ascertain the indebtedness, if any, owing by Wm. P. Wampler to the firm of Neel & Wampler.

6. To ascertain and pass upon the relationship of the partners with the firm; and

7. To ascertain the amount of property already received by each of the parties herein, and the record indebtedness against the several properties, and the net amount of property received by each.

The defendant claimed before the master an overpayment of $4,684.56 as an amount overpaid in purchase of his part in the business, with interest thereon for over twelve years amounting to $3,569.65. On this claim the master ruled out the evidence of defendant and found as follows:

An additional claim is presented by Mr. Wampler as a debt owing to him and has taken credit for it in his account. This claim consists of two items and is very remarkable. The first item is for $4,684.56, overpayment for interest in business, and interest thereon, for a period of twelve years, eight months and twelve days, amounting to $3,569.65, making a total of $8,253.56.

The consideration Mr. Wampler was to pay for his one-fourth interest in the copartnership of Neel & Wampler was $18,500. On March 12, 1875, he signed a paper declaring that this amount was to be paid by him from his portion of the profits derived from the business each year, or sooner, if practicable, without interest. The same day that this paper was issued a credit of $4,539.22 is given on account. A remarkable profit growing out of a business not yet a day old. A year and nine months thereafter a credit of $1,555.71 is credited on the back of this paper. Profits were diminishing. Two years thereafter, another credit of $1,920.32 is given. Profits still diminishing. Two years thereafter a credit of $3,973.61¼ is given. Profits increasing largely. After the payment of those several sums there

remained a balance of $6,511.13¾ still due and unpaid on account of this interest. On December 2, 1884, a credit appears upon the back of this paper for $11,195.65½, apparently an overpayment of $4,684.56. And this overpayment is made by the man who had sole and entire charge of the firm's business. The man who conducted and carried on the business, handled its affairs, attended to its financial matters, made all purchases and sales, and was conversant with its profits and losses. With his knowledge of the business and its condition, in his right mind, he deliberately overpays, to his copartner, who is not actively engaged in or with the firm's business, a claim against himself of $6,511.13. Another fact in relation to this most remarkable payment is that it is charged on the account filed among the three last items, both in the cash book and the account filed under date of September 4, 1897, the day the court appointed a receiver for this firm. Under this state of facts, it would require very strong evidence on the part of the surviving partner to convince a chancellor that it was an overpayment made by mistake or under circumstances that the payee had no control over. There was no evidence offered by Mr. Wampler on this matter other than the paper itself to sustain this claim. If Mr. Neel were living, he might be able to explain the matter satisfactorily, and that would justify such a charge being made against the firm. The books in the hands of the receiver are as silent as the grave with regard to this claim, excepting as entered by the surviving copartner, on the day the court laid its hands on them and handed them over to the receiver. Why Mr. Wampler permitted this claim to remain unsettled for eight years during Mr. Neel's lifetime, and for nearly five years after his death, does not appear. If the claim was a just one, it certainly at this late date is a very stale one. It has laid dead, lo, these many years and by this time it is nothing but dry, bleached bones, that when resurrected crumble into dust so that, like a puff of smoke driven away, leaves not even the semblance of a cloud. I cannot allow either the claim or interest thereon asked for.

Defendant further claimed a salary aggregating $15,750.

From the testimony it appeared that on December 23, 1890, it was agreed between Wampler and Neel, that each should receive a salary of $3,000 per year until further notice. The mas-

ter found that this agreement was ended by the death of Neel, and that defendant was not entitled to any salary as surviving partner.

Other questions raised before the master were merely questions of fact.

Exceptions to the master's report were overruled by the court.

*Errors assigned* were in overruling exceptions to master's report.

*E. P. Douglass*, for appellant.

*Edwin W. Smith*, with him *P. C. Knox, James H. Reed* and *H. W. Mitchell*, for appellee.

PER CURIAM January 7, 1901:

The bill in equity, the answer to it and the replication of the complainants were filed in November, 1895. In April, 1896, the case was put down for trial on the equity list, and after proceeding for a short time a stipulation was agreed upon between the parties, which carried the case over for another year. On September 4, 1897, the Union Trust Company of Pittsburg was appointed receiver for the firm. On December 7, 1897, John G. MacConnell, Esq., was appointed referee and master, with powers and duties defined by agreement of counsel for parties. A specification of his powers and duties appears in his report on pages 17 and 18, and in the appendix on pages 1 and 2. In this connection it may be stated that later on MacConnell was appointed auditor to pass upon the account filed by the receiver and to make distribution. The duties to be discharged and the powers to be exercised by MacConnell under the appointments he accepted required patient and careful investigation of the many matters in dispute between the contending parties. That he gave faithful attention to the performance of the duties committed to him we have no reason to doubt. To his first and principal report the appellant filed twenty-nine exceptions. These exceptions were carefully reviewed by the master in a supplemental report and if error was discovered in either of them it was promptly corrected. The master in a few of the exceptions discovered discrepancies in the figures which he cor-

rected and adjusted in their proper place. In our examination of the reports of the master, approved and confirmed by the court, we have discovered nothing which appears to require a modification of them.

Decree affirmed and appeal dismissed at the cost of the appellant.